HOOD, Judge.
This is an expropriation suit instituted by Gulf States Utilities Company against *196 Frank Sonnier. It was consolidated for trial and appeal with several other similar cases, one of which is Gulf States Utilities Company v. Cormier, La.App., 182 So.2d 176.
The land affected by this suit is designated as Parcel No. 7 in the plat which appears in the decision which we rendered in the Cormier case, supra. This tract is almost rectangular in shape, it comprises 28.967 acres, and it is located less than one-half mile southeast of the center of the unincorporated village of Ossun. It has no frontage on a public road, but it is located about one-fourth of a mile east of the blacktopped highway which runs from Scott to Ossun, and access to and from that thoroughfare is provided partly by a private gravel lane and partly by a public gravel road. The owner resides on the property. He operates a small dairy on it and also uses it for pasturage and agricultural purposes. The improvements on the land consist of a single family residence, a milking parlor and dairy barn, a large artificial pond and fences. None of these improvements, however, lie within the path of the right-of-way or in close proximity to it.
The right-of-way sought by plaintiff runs at an angle along the extreme western edge of this property. It crosses the western boundary near the southwest corner of this tract, and it continues from that point in a northeasterly direction to the north line of defendant’s property. The servitude comprises a total of 2.258 acres.
The trial judge awarded defendant the sum of $2000.00 for the servitude taken and the additional sum of $1380.00 as severance damages. Plaintiff appealed, contending that the award for the taking should be reduced and that the award of severance damages should be deleted. Defendant answered the appeal, demanding that there be an increase in the award of severance damages and in the fees allowed the experts who testified at the trial.
The experts called by plaintiff were of the opinion that the highest and best use of the subject property was for agricultural purposes, while those called by the defendant felt that it was best suited for rural homesites. The trial judge, accepting the opinions expressed by defendant’s experts, concluded that the highest and best use for the property was for rural homesite purposes.
The evidence shows that defendant’s property is high, well-drained and level. Considering the nearness of this property to the village of Ossun, and the testimony of the experts as to the suitability of such property for homesite purposes, we find no error in the conclusion reached by the trial judge that its highest and best use is for rural homesites.
Dan A. Ritchey, Jr., considering the fee value of the property taken to be $550.00 per acre and the servitude to be worth 80 per cent of that amount, estimated the value of the 2.258-acre servitude to be $1000.00. Allen J. Angers valued the land at $400.00 per acre, and the servitude at two-thirds of that amount, or about $725.00. Two appraisers called by defendant, Lloyd Smith and Chester L. Martin, each valued the land at $1200.00 per acre and considered the servitude to be worth 75 per cent of the value of the land or about $2034.00.
The trial judge, agreeing generally with the opinions expressed by defendant’s experts, concluded that the property had a fee value of $1200.00 per acre, and he awarded defendant the sum of $2000.00 for the servitude taken.
Plaintiff contends in the instant suit, as it did in the Cormier case, supra, that the prior sales relied on by defendant’s experts were not comparable, and that the trial judge erred in considering the “average” per acre value of all of defendant’s property in determining the value of the particular portion of the property which was affected by the servitude.
Plaintiff’s appraisers considered six sales of property as being comparable, *197 the prices paid for such property ranging’ from $353.00 to $693.00 per acre. The defendant’s appraisers also considered six different sales, the prices paid for the property in those instances ranging from $1100.00 to $4800.00 per acre. No worthwhile purpose would be served by a discussion of each of the sales considered by the appraisers and the reasons why each felt that the transactions considered by him constituted more accurate indications of the market value of the subject property. Our conclusion, after considering these sales and the testimony of the experts, is that the reasons assigned by defendant’s experts for considering the sales they relied upon as being comparable are as sound and as logical as are those assigned by plaintiff’s experts. We cannot say that the trial judge erred in accepting the testimony of defendant’s experts as to the value of this tract of land, and we therefore affirm his conclusion as to the value of the servitude taken.
For the reasons assigned in the Cormier case, supra, we are convinced that there was no error on the part of the trial judge in accepting the “average” per acre value of defendant’s property as being the correct measure for determining the value of the land included in the servitude. Defendant’s experts explained that the land near the dwelling house was worth about $1600.00 per acre because of trees which were located in that immediate area, but that this was offset by the fact that another part of defendant’s property in the immediate vicinity of a ditch, and not included in the servitude, had a value of less than $1200.00 per acre. The evidence convinces us that the property included within the servitude had a per acre value of $1200.00, as found by the trial judge.
The trial judge concluded that all of the remainder of defendant’s property would sustain a 5 per cent diminution in value as a result of the taking. Having fixed the value of the property at $1200.00 per acre, he determined that the remainder would be diminished in value by $1380.00, and he thus awarded that amount to defendant as severance damages.
Plaintiff’s demand that the award of severance damages should be deleted is supported by the testimony of Ritchey and Angers, both of whom testified that there would be no diminution in value of the remaining property. Defendant, on the other hand, contends that the award of severance damages should be increased to the sum of $7345.20.
One of the appraisers who testified in behalf of defendant felt that all of defendant’s remaining property which is located on the east side of the right-of-way would suffer a diminution in value of 20 per cent, and the other felt that it would be diminished in value 15 per cent, as a result of the taking. They also felt that the small triangular remaining tract, containing 1.8 acres and located on the west side of the servitude, would be diminished in value by 75 per cent. In their opinion, defendant would sustain severance damages in the aggregate sum of $7345.20.
In determining the amount to be awarded as severance damages, the trial judge stated that “the 1.8-acre strip is included by the court in the referred to remaining 23 acres.” Pie specifically intended, therefore, for the award made for that item to include the severance damages sustained by all of defendant’s remaining property, including the portions which are located on both sides of the right-of-way. After considering all of the evidence, and for the reasons which we assigned in the Cormier case, supra, we conclude that the award made by the trial judge as severance damages is adequate.
Also, for the reasons which we assigned in the Cormier case, supra, we will not disturb the allowance made by the trial court as fees of the expert witnesses.
*198 For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.